UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUDITH K. SCOTT,

      Plaintiff,

vs.                                                                        Case No.  3:05-cv-61-J-MCR

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's Complaint (Doc. 1) seeking judicial

review of an administrative decision denying her claim for a period of disability and

disability insurance benefits ("DIB").  The Court has thoroughly reviewed the record, the

briefs and the applicable law.  For the reasons set forth herein, the Commissioner's

decision is **REVERSED and REMANDED** for further findings consistent with this

Memorandum Opinion and Order.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance

benefits ("DIB") on April 18, 2002, alleging she became unable to work on November

15, 1998.  (Tr. 72-74).   The Social Security Administration ("SSA") denied Plaintiff's

application initially and upon reconsideration.   Plaintiff filed a timely request for a

hearing on the matter before an Administrative Law Judge ("ALJ").  (Tr. 47).  Plaintiff's

---

[1]The  parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc.  7).

request was granted and the ALJ conducted a hearing on May 5, 2004. (Tr. 47, 607-651). The ALJ subsequently issued a decision dated July 22, 2004, concluding Plaintiff was not disabled and therefore not entitled to a period of disability or DIB under sections 216(i) and 223 of the Social Security Act. (Tr. 12-13). Plaintiff subsequently filed a timely request for review by the Appeals Council, which was denied on November 23, 2004. (Tr. 5-, 11). As a result, pursuant to 20 C.F.R. §§ 404.981, 416.1481 and 422.210 (2004), the ALJ's decision became the final decision of the Commissioner. Plaintiff subsequently filed a timely Complaint (Doc. 1) in the United States District Court on January 18, 2005, seeking judicial review of the Commissioner's final decision.

## II.   SUMMARY OF EVIDENCE PRESENTED

Plaintiff was born July 12, 1957. (Tr. 72, 615). At the time the ALJ issued her July 22, 2004 decision, Plaintiff was forty-six (46) years of age, a "younger person" as defined by 20 C.F.R. § 404.1563. (Tr. 615). Plaintiff possesses a ninth grade education and, on several occasions, has unsuccessfully attempted to complete a general education development certificate ("GED"). (Tr. 615). Plaintiff's past work experience includes employment as a certified nurse assistant, sales clerk, sandwich maker and cashier. (Tr. 17, 616-620).[2] She claims to be disabled since November 15, 1998, due to shaking, weakness in her legs, migraine headaches, seizures, an inability to concentrate, dizziness, blurred vision, back and chest pain and visual disturbances. (Tr. 17).

---

[2]Because Plaintiff met the non-disability requirements set forth in Section 216(i) of the Social Security Act and was insured through September 30, 2001, the ALJ considered whether Plaintiff was disabled as defined by the Act on or before that date. (Tr. 17).

### A.    Medical Evidence

In her decision, the ALJ provides a detailed account of Plaintiff's medical history.

Relevant to this matter, the record shows the following.  On August 7, 1998, Plaintiff

was admitted to Memorial Medical Center complaining of seizures, fatigue, headaches

and difficulty speaking. (Tr. 319-322).  An electroencephalogram  (EEG) showed no

seizures; however, other diagnostic tests revealed a 3-centimeter left lateral sphenoid

temporal meningioma (brain tumor).  (Tr. 320).[3]   On September 2, 1998, Plaintiff

underwent surgery to remove the tumor.  (Tr. 329, 331-332).  The procedure was

performed by Mark Spatola, M.D., a board-certified neurosurgeon.  Id.  Plaintiff was

examined by Dr. Spatola one week after the procedure.  (Tr. 349).  Based upon his

examination, Dr. Spatola noted Plaintiff was neurologically intact and "doing very well."

(Tr. 349).  He further noted Plaintiff was taking Depakote and that she had experienced

no seizures.  (Tr. 349).

During a follow-up visit on November 19, 1998, Plaintiff reported a burning metal

taste which Dr. Spatola indicated could be a possible indication of seizures.  He

therefore suggested Plaintiff continue taking Depakote.  (Tr. 347).  Subsequent patient

notes reveal Dr. Spatola discussed with Plaintiff the possibilities of her taking Depakote

indefinitely for treatment of her headaches and seizures, or gradually discontinuing the

medication under the supervision of a neurologist.  (Tr. 348).  The notes further reveal

Dr. Spatola found Plaintiff neurologically intact and capable of returning to work in

---

[3]Dr. Spatola's impression was "[l]eft lateral sphenoid temporal meningioma 3 cm with seizure.  Small amount of cerebral edema surrounding this, with headaches."

January 1999.  (Tr. 347-349).  He therefore released Plaintiff from his care in October

1998.  (Tr. 345, 347).

In response to her complaints of headaches and seizures, Plaintiff began

treatment with Jacob Green, M.D., a board-certified neurologist, on November 18, 1998.

Dr. Green opined Plaintiff suffered post-operative seizure disorder as well as bi-frontal

headaches. (Tr. 373-379).  He recommended she continue taking Depakote for at least

another year.  (Tr. 374).  Dr. Green also discussed with Plaintiff the possibility of

discontinuing the medication and recommending reinstatement of her driving privileges,

provided later EEG results remained negative for seizures.  (Tr. 374).

Although released from his care, Plaintiff returned to Dr. Spatola complaining of

headaches, dizziness, spinning, weakness, anxiety and tremors.  In a letter dated

March 26, 1999,  Dr. Spatola noted Plaintiff discontinued taking Depakote on her own

and that she may have been experiencing symptoms of anxiety or depression.  (Tr.

345).  Based upon his examination, Dr. Spatola further noted that he found no

indications requiring surgical intervention and recommended that Plaintiff's treatment be

deferred to Dr. Green, her treating neurologist, and Stephen Clark, M.D., her primary

care physician.  (Tr. 345).

Diagnostic results from Memorial Hospital show, in January 2000, Plaintiff had an

"abnormal EEG forcal, left frontal, paroxysmal" with indications of cortical irritability of

the left temporal frontal area.  (Tr. 372).  Plaintiff was subsequently examined by David

F. Scales, M.D. of the Jacksonville Neurological Clinic, P.A.  (Tr. 554-562).  He noted

Plaintiff experienced post-operative headaches daily, typically preceded by numbness

or lightheadedness.  (Tr. 560).  He further noted Plaintiff experienced episodes of

mental confusion and transient amnesia accompanied by weakness and loss of

consciousness.  (Tr. 560).  Plaintiff's pharmacological regimen included: Migranol for

treatment of migraine headaches; Antivert, 12.5 mg.; Aleve, 220 mg.; Neurotin, 100

mg.; Anaprox, 550 mg.; and Depakote, 250 mg.  (Tr. 560).  Based upon his

examination, Dr. Scales concluded Plaintiff suffered seizure disorder.  (Tr. 560).

On February 22, 2000, Plaintiff was examined by Randi Most, Ph.D., a

consultative physician.  (Tr. 317).  Dr. Most noted Plaintiff's memory seemed confused

and her abstract thinking impaired.  (Tr. 317).  He concluded Plaintiff's ability to return to

full-time work and manage her finances remained unclear at that time.  (Tr. 317).

Additionally, Dr. Most recommended Plaintiff undergo a complete neuropsychological

examination to determine her level of cognitive function. (Tr. 371).  Based upon his

examination, Dr. Most's diagnostic impression was that Plaintiff suffered anxiety

disorder as well as organic brain syndrome.  (Tr. 371).

Dr. Most examined Plaintiff again on April 18, 2000, where he administered the

Wechsler Memory Scale-III test to assess her logical memory and visual reproduction.

(Tr. 380).  The results revealed Plaintiffs' immediate as well as delayed recall of short

stories was significantly impaired for a person her age.  (Tr. 381).  Her immediate and

delayed recall of geometric figures ranged from low to average.  (Tr. 381).  Dr. Most

concluded the test results suggested Plaintiff experienced a mild to moderate degree of

cognitive dysfunction, resulting from her brain surgery.  (Tr. 381).  He further concluded

the results suggested Plaintiff would have difficulty learning and/or maintaining any type of work.  (Tr. 381).

### B.      Plaintiffs' Testimony

Plaintiff provided the following relevant testimony.  Plaintiff has been taking classes at a local community college to complete her GED since 2001.  (Tr. 615).  Since her brain surgery, Plaintiff experiences fatigue, weakness, blackouts and numbness in her head, migraine headaches and memory loss (Tr. 622-624).  Her husband performs most of the cooking and household chores.  Plaintiff's husband also assists her in getting dressed and bathed.  (Tr. 624).

Plaintiff has been taking anti-seizure medication since her surgery.  (Tr. 631).  She discontinued taking the medication in 2000 for a period of time due to problems with her insurance coverage, but later continued when the matter was resolved.  (Tr. 631).  Plaintiff currently takes Trileptal, which has been working well to control her seizures.  (Tr. 632, 633).

## III.    SUMMARY OF THE ALJ'S FINDINGS

### A.      The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § § 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent

her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education,

and past work) prevent her from doing other work that exists in the national economy,

then she is disabled.  20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found Plaintiff had not engaged in substantial

gainful activity since her alleged onset of disability.  (Tr. 24).  At Steps 2 and 3, the ALJ

found Plaintiff had organic brain syndrome, anxiety disorder and seizure disorder,

severe impairments within the meaning of the Social Security Regulations, but not

severe enough to meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  20 C.F.R. § 404.1520(d).  (Tr. 25).

At step four, the ALJ found that Plaintiff's impairments precluded her ability to

perform any of her past relevant work.  (Tr. 25).  Before moving to Step 5, the ALJ

determined Plaintiff retained the residual functional capacity to perform a limited range

of sedentary work.  (Tr. 25).  Specifically, the ALJ found Plaintiff could: (1)  lift, carry,

push or pull 10 pounds occasionally and less than 10 pounds frequently; (2) stand or

walk for two hours; (3) sit for six hours; and (4) occasionally climb, stoop, kneel, crouch

and crawl.  (Tr. 25).  With the assistance of a vocational expert, at Step 5, the ALJ found

Plaintiff's impairments did not preclude her ability to perform other work existing in the

national economy.  (Tr. 25).  Accordingly, the ALJ concluded Plaintiff was not disabled

within the meaning of the Social Security Act.

## IV.    DISCUSSION

### A.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995), citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.   Summary of the Parties' Arguments

Plaintiff argues the ALJ erred at Step 5 by failing to provide the VE with a

complete hypothetical, including all of her non-exertional impairments.  (Doc. 11, p. 10).

In sum, Plaintiff maintains the ALJ must pose a hypothetical question that includes all of

a claimant's impairments.  Plaintiff further maintains that, because the ALJ failed to do

so in this case, the Commissioner's final decision is not supported by substantial

evidence.

In response, the Commissioner argues there is substantial evidence in the record

to support her final decision regarding Plaintiff's claim of disability.  The ALJ properly

determined Plaintiff's brain surgery and related problems were not of disabling severity.

### C.   Hypothetical Questions

Plaintiff is correct that case law in this circuit requires that the ALJ employ

hypothetical questions which are accurate and supportable on the record and which

include all limitations or restrictions of the particular claimant.  Pendley v. Heckler, 767

F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert

does not fully assume all of a claimant's limitations, the decision of the ALJ, based

significantly on the expert testimony, is unsupported by substantial evidence.  Id. at

1561 (quoting Brenam v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)).

In this case, based upon the Court's independent review of the record, the ALJ

erred by failing to pose a complete and accurate hypothetical question to the VE.  The

ALJ further erred by relying on VE testimony in response to inaccurate hypotheticals to

support her determination that there were a significant number of jobs in the economy that Plaintiff could perform.

In her decision, the ALJ noted that none of Plaintiff's treating physicians "enumerated any work-related limitations regarding her history of brain surgery." (Tr. 21).  The ALJ noted that in May 2000 and February 2001, Dr. Scales indicated Plaintiff's physical and neurological examinations as well as her repeat diagnostic tests were normal.  However, the ALJ failed to note that on at least two separate occasions, Dr. Scales wrote letters requesting Plaintiff be granted additional time to complete her GED examinations. (Tr. 550, 552).  In the letters he stated, sitting for a long period could cause stress and cause Plaintiff to experience seizures.  (Tr. 552).  Moreover, Dr. Scales noted Plaintiff experienced post-operative headaches daily, typically preceded by numbness or lightheadedness.  He further noted Plaintiff experienced episodes of mental confusion and transient amnesia accompanied by weakness and loss of consciousness.

The ALJ credited the opinion of Dr. Most to the extent that Plaintiff had a mild to moderate degree of cognitive dysfunction resulting from her brain surgery and anxiety disorder.  (Tr. 22).  However, based upon his examination and testing, Dr. Most addressed Plaintiff's additional limitations very specifically. Dr. Most opined Plaintiff displayed significantly impaired recall suggesting difficulty in her ability to learn.  He further opined Plaintiff's anxiety would likely exacerbate her cognitive difficulties and "vice versa."  (Tr. 381).

The ALJ noted she agreed with the mental medical assessments provided by the consultative physicians. On November 20, 2002, Janice H. Miller, Ph.D., clinical psychologist, determined Plaintiff experienced moderate degrees of limitation in the following areas: (1) maintaining concentration, persistence or pace; (2) the ability to understand and remember very short and simple instructions; (3) the ability to carry out detailed instructions; and (4) the ability to maintain attention and concentration for extended periods of time. (Tr. 564-578). The July 22, 2002 assessment by Susan Conley, Ph.D., clinical psychologist, provided virtually the same results. (Tr. 515-531).

While the ALJ accorded weight to the opinions of Drs. Most, Miller and Conley, agreeing in part that Plaintiff experienced moderately decreased memory, the only nonexertional limitation she included in the hypotheticals was a moderate deficiency in concentration. (Tr. 639-645). Based on the hypothetical presented, the VE testified that Plaintiff could work with such a nonexertional limitation. The undersigned finds the hypothetical presented to the VE by the ALJ failed to include all of Plaintiff's limitations. In accordance with Pendley, where the hypothetical employed with the VE does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. Pendley, 767 F.2d at 1561 (quoting Brenam v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)).

**V.    CONCLUSION**

For the foregoing reasons, the Clerk of the Court is directed to enter judgment pursuant to sentence four, 42 U.S.C. 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to: (1) re-evaluate the existence of any

-11-

non-exertional limitations that significantly limit Plaintiff's basic work skills; (2)

specifically articulate any distinct findings regarding Plaintiff's non-exertional limitations;

(3) consult a vocational expert if necessary; and (4) conduct any other proceedings

deemed appropriate.


        **DONE AND ORDERED** in Chambers in Jacksonville, Florida this  23rd  day of

February, 2006.


                                                _Monte C. Richardson_

                                        MONTE C. RICHARDSON
                                        UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party